Mr. Kimberley. Thank you, Mr. Chief Justice, and may it please the Court. The upshot in practice of the Commonwealth's proposed rule in this case is that when a criminal defendant, like Petitioner, demonstrates that his trial counsel failed to preserve the fundamental fairness of the criminal proceeding by failing to object and therefore allowing to stand a structural error, the gravest kind of constitutional error in the history of a criminal trial, it will be impossible for the defendant to obtain relief under Strickland v. Washington for ineffective assistance of counsel. And that's because the Commonwealth says that such — all such defendants must prove actual prejudice resulting from their attorney's deficiency. But the problem is that when an attorney deficiency results in a structural error, it will be practically impossible to demonstrate what the practical effects of — The problem is the structural errors, I think when we put it this way, come in all sizes and shapes. So here we have not an exclusion of the public from the trial itself. It's only from the jury selection. But I take it your view is it doesn't matter if it had been the first day of the jury selection, everything else is open, or if the entire proceedings are closed. Structural error will go from structural error directly to new trial. Do you make any distinctions between kinds of errors that we have called structural? The short answer, Your Honor, is no. There are distinctions to be made, and in the context of the public trial right, for example, those distinctions play out at the But certainly what this Court suggested in Waller, where the courtroom closure was for a suppression hearing at the outset of the trial and not the entire trial, that when the public trial right is deemed to have been violated, it is itself structural. That doesn't mean, as Justice Stevens recognized in footnote 23 of his concurrence in Reporters' Committee, that doesn't mean that the public — that every single closure of the courtroom necessarily implicates the public trial right as the framers of the Sixth Amendment would have understood it. For instance, sidebars and, in some instances, chambers conferences, and certainly any circumstance in which the State is able to pass the strict scrutiny test established by Waller, those sorts of closures, although closures in the technical sense would not be closures in the constitutional sense. Roberts This may not be directly pertinent, but why was the courtroom considered closed? I mean, it was filled with members of the public. Now, they were there as part of the jury pool, but of course they weren't all chosen. I mean, what was the — did the judge have to set aside how many seats for people who weren't actually being called for jury duty before you would conclude that the courtroom was not closed? Well, I would have thought that the courtroom — so the — Not — I mean, it's a limited space. There's only so many spaces, and it's, you know, he's got to get the jury pool in there, and, you know, they took up all the space. So you must — your position must be, on the error itself, that the judge should have kept aside certain seats for people who weren't being called for jury duty. I'm just curious how many that is. So I — there are two elements to that question. I'll take them each in turn. The first is we know that the courtroom was closed because members of the public and, indeed, every member of the public who expressed an interest in attending the proceeding who was not a member of the jury veneer was turned away, actively turned away. Well, but you presumably, I guess the argument on the other side, well, they were turned away because there was no room, and there was no room because the courtroom was full of members of the public who were called for jury duty. So — and that leads to the second answer, and that is, as this Court held in Presley, first of all, courtroom crowding is not a sufficient answer for turning away, a sufficient justification for turning away other members of the interested public. Well, I'm not — I'll have to go back and look at Presley, but courtroom overcrowding is not a justification for turning away other people. What are they supposed to do? Well, but to be very clear, that is precisely what happened in Presley. Presley, the — the just— Roberts What did they say in Presley that you were supposed to do? In other words, there is no room in the courtroom and you say, well, that's not a justification for keeping people out. So the answer is very simply bringing in the jury veneer in groups of, say, 40, rather than allowing all 90 in at once. There are a range of, I think, very practical solutions to this particular problem that would have allowed the judge to keep the gallery open to members of the public. Presumably, lawyers are members of the public. The judge is a member of the public. The bailiff is a member of the public. I'm presuming that once those jury members, if they were given a choice, would not be there. And so I think they have stopped being a member of the public as might be understood with respect to access. I think one thinks of members of the public as anyone who might be interested but not compelled to be in attendance. Right. All right. So I think what Presley said, if I'm not mistaken, is that you can't keep out interested people just because of overcrowding. That's exactly right. And I think underlying that holding is a recognition that not all members of the public are the same. So in this instance, for instance, the members of the public who were excluded from the proceeding were the defendant's own mother, his mother's boyfriend, sister, and pastor. And so bearing in mind that the jury impanelment is the point at which the defendant is introduced to the judge and jury for the first time, it's the first opportunity for the defendant to make an impression on the people who decide his or her guilt or innocence, it makes a real difference both in terms of how the defendant behaves, that members of the interested public, not just any member of the public, but his support system, his friends and family are present. It has an effect on his demeanor and the confidence with which he presents himself. But it also has an effect on how the jury perceives him, because what does it say that at the first time that the members, again, of the jury who are going to decide this young man's guilt or innocence, he is presented to them without the support even of his mother? Alito So what you are saying, and I think this is true, is that there are circumstances in which closing the courtroom can have an effect on the outcome of the trial. But conversely, is it your position that it's never possible for there to be a violation of the right without there being an effect on the trial, that it's never possible to show that this could not have had any effect on the outcome? I think that's right. It's to say that and this is reflected in this Court's precedent. As a practical matter. As a practical matter, it's never possible to show that there would be no outcome, no effect on the outcome? I think this is precisely the sort of situation that the Court recognized in Gonzalez-Lopez about the right to counsel of choice, that it's a speculative inquiry. So in this case, what's your best theory about how this could have affected the trial, what happened here? Well, as I was just describing, there's no way to tell what effect the presence of the defendant's mother would have had on the impression made to the jurors who, again, were first introduced to him and formed their first impression of him sitting alone without the support of anybody. There's no way to know what effect it had on his own demeanor. There's no way to know what the effect of his mother's and pastor's presence would have had on the demeanor of the attorneys and the judge. These are all completely and as we say, it may be that the attorneys may have exercised preemptory challenges in different ways. It may be that prospective jurors moved by the differences of the presence of the public would have answered questions in somewhat different ways and would have formed different inquit attitudes about the defendant. These are completely unknowable and indeterminate effects, though. And that's exactly what this Court said in Waller, and it's why since Waller, the lower courts have universally treated the question of a courtroom closure as a structural error as to which harmless error on direct appellate review simply cannot be demonstrated. And we think certainly that exact same analysis applies with respect to Strickland actual prejudice. Alitoso, suppose the two people who couldn't get in were members of the public but not the defendant's mother and her pastor. Well, again, I think it would depend on who they are. I think the difficulty here also is there's no way to tell what sort of the downstream effects of the closure are outside the courtroom. It may be that those who were excluded the first day let be known to others that the courtroom is closed and others then don't plan to show up and don't even bother to come in. Sotomayor, could I ask you, though, there is a big difference between the absence of an attorney at trial or a conflict of interest. In both those situations, there's not a possibility of waiver or forfeiture. Knowing waiver or forfeiture, because a conflicted counsel has failed to tell someone a truth that they're conflicted and gotten themselves off the case. Absence of counsel is the very essence of the violation. The defendant doesn't know enough to object. But here there are serious questions about waiver and forfeiture. It's why wouldn't it be in the best interest of every attorney to say, I didn't know that a closure was a constitutional violation the way this gentleman did. Isn't that? In circumstances where that isn't actually the truth? No. In every circumstance. So in virtually every circumstance, the lawyer knows there's been a closure. There's been plain error in his failure, his or her failure to object. So how does a judge determine whether that waiver or forfeiture should or should not be held against the defendant? Well, I think the same way that the judge would do so in any case implicating a Strickland claim based on a failure to object. The threshold question is whether the attorney rendered deficient performance. And in this case, for example, at pages 7 and 8 of the joint appendix, there's no question that the defense attorney here acknowledged that the sole reason he declined to object to the courtroom closure was he did not know that it was a violation of his client's public trial right. And if he had known, he would have raised an objection. That's a, I think, a straightforward case of deficient performance. Now, it's true the Commonwealth and the United States have raised the possibility of sandbagging in a circumstance where a defense counsel who in fact does know about the violation of the right nevertheless declines to raise it to preserve the possibility of bringing a Strickland claim later. But that turns on the presumption that the defense attorney would make a material misrepresentation to the court in later collateral proceedings addressed at that, at the question of the first prong, whether he rendered deficient performance. Roberts, why does that follow, though? Because it seems to me that if it's unpreserved error at trial and we get to appeal, you'd have a choice in most cases, IAC claims are dealt with collaterally. You could either bring it as a plain error question on direct appeal, but you'd have to face prong 4. Correct. And show it affects the integrity of the proceedings. Or you'd have a choice. You could bring it in collateral proceedings where you wouldn't have to meet prong 4, and it'd actually be easier to win a Sixth Amendment collateral claim than it would be a plain error claim. And it just seems very unusual to me that we create a structure that would incentivize through honest and good advocacy, defiance of the normality of final judgments. So that's question one. And question two is related. Would we then create actually a really perverse incentive for the State to secure IAC waivers from individuals? So that they don't confront these kinds of problems. And therefore, kind of a Professor Stuntz sort of problem, by perfecting procedure, we actually result in its denial at all. Can you help me with those two problems? So the question about plain error, first, I think it depends on the jurisdiction that you're in. In this jurisdiction, for example, Massachusetts. Work with me with the typical jurisdiction. I know Massachusetts is a little different. Well, so there are groups of two. Massachusetts falls into one bucket. Most of the Federal courts fall into another bucket. Work with the usual, the Federal jurisdiction, which is predominant in most States. Which is that IACs are done collaterally. And actually, I appreciate it. I wouldn't deny that this is a collateral proceeding here. I'm not talking about the Federal. I understand that. But please, just stick with me. So under Rule 54B in the Federal proceeding, in the Federal context, this is the Alano four-prong plain error context. We think it's true that, for the most part, in the way that the lower Federal courts have dealt with it, is that the third prong, effect on substantial rights, is presumed when there is a structural error. And so I think as a practical matter they're still at prong four, though, right? It's still at prong four, and I think that's where, for instance, there's an opportunity for the court to avoid sandbagging if there's any concern that the defense counsel knew about it and kept the objection. But the defense counsel just doesn't bring it, doesn't bring it on direct appeal. Good defense counsel wouldn't bring it and would leave it for collateral review in most jurisdictions. Sure. I mean, I think in that circumstance, very frequently, plain error review would be available. I'm sorry to push back on this. Sotomayor, the question is, wouldn't the judge be doing exactly what's happening here? Wouldn't the judge, under the fourth prong, look at what actually happened, whether the closure was complete, part of the trial, was there a transcript of the voir dire so that they could measure the possible effects or not, and end up saying that the substantial integrity of the proceedings have been violated? Do you think that as a matter of law we could overrule a finding of that nature if it was in direct review under plain error? I think in most circumstances, where there is a structural error that passes the third, it will almost always pass the fourth. Sotomayor, that's not the lessons of our case law. In fact, the reverse is true of our case law. I don't mean to deny that the fourth prong has, has, does real work. It certainly does. And there are case-specific circumstances in which maybe then the appellate court would decline to grant relief on collateral review, and the defendant would, in that circumstance, be able to bring a collateral challenge under Strickland. The one, I just want to push back a little bit on the hypothetical, because in fact, there are a number of State jurisdictions in which plain error review of this sort isn't available at all because they decline to presume prejudice on whatever the equivalent of Alano prong 3 is. And Massachusetts is such a State. And so in our case, in any jurisdiction, State court jurisdiction, where State courts have leeway to undertake whatever plain error, procedural plain error rules they like, they aren't bound by this Court's or the Federal Court's precedents on Rule 54b, they can and very frequently do say that structure, that you have to show actual prejudice, actual prejudice in the sort of Strickland sense for relief under plain error. And in that circumstance, Strickland is a critical, we think, relief valve. It's the only way of getting later review in the circumstance where the structural error perpetuated by the attorney's deficient failure to object renders the trial fundamentally unfair. And I think it bears emphasis to recall that the Commonwealth does not deny that if there were an objection in this case, the defendant in this case and in other cases like it would be entitled to a new trial automatically on direct appeal. The Commonwealth does suggest putting that error, and remember, structural errors go to the fundamental fairness of the proceeding. They are the gravest sort of constitutional errors possible in the course of a criminal proceeding. Putting that error together with the additional injury of having been appointed counsel by the Court who's too ignorant to know to object to the structural violation, that the defendant should be completely out of luck. Roberts. Roberts. Roberts. The structural errors are not the most grievous errors possible in the criminal process. They are a particular type of error, which the assumption is there's no way to tell whether they're prejudicial or not. But, I mean, this may be a good case. That doesn't mean they're the most shocking miscarriages of justice you can imagine. Well, I don't think that they're necessarily shocking, but I would say that this Court's structural error precedents make clear that although one feature of a structural error is that it's impossible to determine the practical consequences, it is an independent feature of structural errors that they render the trials fundamentally unfair. The idea is that the rights that are protected by the structural error doctrine are just essential elements to a fair trial. And so take, for example, the right to trial by jury. Under the commonwealths in the United States. Roberts. No, no, yeah, you're picking good ones, but I mean, I can come up with a long list of things that I think are more serious violations than the exclusion of the public from voir dire when you have the other jury members there. I understand that that is an error, and I unmute the argument, of course, that it is a structural error. But I'm just quarreling with the idea that these are the most grievous miscarriages of justice you can imagine. There are particular characteristics of them that put them in a different category. A list of errors that could occur in criminal procedure, I think you'd agree, there are some that you would put ahead of excluding members of the public from voir dire when the courtroom is otherwise full. And I didn't mean to suggest or overstate the grievousness of the error. What I meant to suggest is that these are a category of errors where the Court recognizes that their denial, that the denial of the rights protected by this doctrine render the proceeding automatically suspect and inherently unfair. Kagan, But in a way, Mr. Kimberley, I mean, you don't have to convince us of that, do you? Kimberley, I hope not. Kagan, Yeah, no, I'm just thinking you don't have to convince us because one of the things that we've said over and over about structural error is that it's impossible to show how they affected the trial. Kimberley, That's correct. Kagan, And that's really what's at issue here, is whether we should put the defendant to the burden of showing how it affected the trial when, in fact, we've said over and over that you can't do that. So whether they're important, whether they're not important, whether they're critical to fundamental fairness or not, you know, is in some ways beside the point. Kimberley, Well, so I think there are two independent ways of thinking about it, and that certainly is one very important way of thinking about it. It's something that we stress in our briefing, and I think that's absolutely right. This is the point about putting two wrongs together and just saying that the defendant can't do it. Alito, Well, it's not a question of putting two wrongs together. I mean, the Commonwealth's argument and the argument of the United States is that there is no violation of the Sixth Amendment right to counsel unless the counsel's performance deprived the defendant of a fair trial. This is not a Sixth Amendment speedy trial – I'm sorry, Public Trial Act issue. It's a right to counsel issue. And prejudice is built into the Sixth Amendment Strickland standard, because the defendant had an attorney. So on what theory was the defendant deprived of an attorney? Well, the theory is, although there was somebody sitting next to that defendant and asking questions and pretending to be an attorney, that attorney was so bad that he might as well not have had an attorney. So it's built right in. And so ultimately, there has to be the determination for there to be a Sixth Amendment right to trial violation that there was prejudice. Now, you can make the argument that it's impossible to tell whether there was prejudice, but it's built right into the speedy trial – into the right to counsel. I think that's exactly right. I wouldn't disagree with anything you said, but that leads me to the second point that I was going to make, and that's that Strickland instructs that the fundamental focus of the ineffective assistance inquiry has to be on the fundamental fairness of the trial. If, therefore, the two – as we understand the two steps, it's whether there was deficient performance, objectively unreasonable performance, and whether that objectively unreasonable error in turn rendered the trial unfair. Now, in the mine run of cases, we do not disagree. In the mine run of cases involving trial errors, the way to prove that the error rendered the trial fundamentally unfair is to show that it was sufficiently serious, that it undermines our confidence in the result. Alito And you have to say that that's always true, or it's true in such a high percentage of the cases that there's no point in even making that an issue, no matter how steep the burden that the prosecution might have to satisfy. That is the reasoning underlying Cronic. I think it's somewhat different from what we're suggesting here. What we're suggesting here is that the rights protected by structural errors are fundamental to the American system of criminal justice, and that their denial renders the trial fundamentally and inherently suspect and, therefore, unfair. And so it is simply another way to prove that a defense attorney's objectively unreasonable error rendered the trial unfair to show that it resulted in a structural error. It is the – it is the hallmark of a structural error that it does exactly that, that it renders the trial unfair. Alito But let's put this label aside for a minute. You really think that it's impossible, that there can never be a case where a violation like the one that took place here had no effect on the outcome of the trial? It's impossible to ever – for there ever to be such a case? It's impossible to tell. And what I would say about this is I'd point the Court, for example, to the Eighth Circuit's decision in Stenberg – excuse me, in Glickman against – not Glickman – McGurk against Stenberg. The issue there was Nebraska had enacted a statute that deprived criminal defendants in DWI cases of a right to trial by jury. The judge had to decide guilt in that case. The defendant was found guilty. He appealed throughout the State system. His appeals were denied. On Federal habeas review, it was not until the Eighth Circuit looked at the case, and the government in that case making the exact same arguments that the Commonwealth and the United States here make. The Court there said it is no answer to the denial of a jury right to say that the evidence against the defendant was strong. The point is it was the wrong entity who decided guilt or innocence. It is fundamental to the American system of criminal justice and to our promise of fair trials that criminal defendants be tried by juries. Alitono, that's a different – I mean, that's a different situation. Suppose the only people who wanted to go, the only members of the public who wanted to be in this, in the courtroom, were the family and friends of the victims of a crime. So it would be a hostile audience. I think that would implicate many of the same problems that we have here. There's no way to tell the ways in which individuals would have been affected by their presence. It very well may be that that would have cast the defendant in worse light, but there is no way to know. Maybe some members of the jury veneer would be off-put by what they viewed as a specially egregious behavior in that circumstance. The point is it remains a speculative inquiry, and I think as we've suggested, I think the Court's cases on this point really leave very little doubt that as far as denial of the public trial right goes, there's no way to tell what the difference is. And if in order to obtain relief we require defendants to prove what the difference is, it means that just as a practical matter, there will never be relief for violations of the public trial right that happen to be coupled with the additional injury of defense counsel who don't know to object. I'd like to reserve the balance of my time. Roberts. Roberts. Thank you, counsel. Mr. Ravitz. Mr. Chief Justice, and may it please the Court, the claim before the Court is one of ineffective assistance of counsel, and requiring individualized prejudice to be proven for claims like that, claims like the Petitioner's, ensures that a criminal judgment is not vacated unless a violation of the right to effective counsel is complete. It tells us whether the defendant's own conviction resulted from a breakdown in the adversarial process, or was likely the right outcome. And it keeps us from upsetting judgments based on attorney errors that had no impact on the verdict. Supposing this objection had been made at the first opportunity, and it's denied by the trial judge, and then it goes up on appeal. So there was a timely objection, wouldn't it follow then that the case has to be the judgment has to be vacated and it has to be a retrial? Assuming the judge's decision was improper, yes, that's what would happen in Massachusetts. But that wasn't the case here, and it's important to recognize the distinction between those two situations, because there are both doctrinal and practical considerations there. The doctrinal ones are that now we are looking at a different type of claim. We're not looking at a public trial claim. We're looking at an ineffectiveness claim. And there must be prejudice in order for that violation to be complete, Gonzales-Lopez tells us. Not only that, the focus of the prejudice inquiry is different than the focus that it would be if we were looking at a violation of the right to a public trial. Strickland tells us unless it's a structure, unless the fact that it's a structural error is fatal, then in the situation, in the hypothetical Justice Ginsburg provided, wouldn't it be open to you to prove that it was harmless error beyond a reasonable doubt? That's correct if it was not a structural error. But if it's a structural error, then the government would be precluded from making that showing. And what's the structural error in this case, in your view, under the hypothetical? Where there was an improper closure of the trial, we respect the fact that or I should say of jury selection, we respect the fact that the Court has said that public trial errors are structural and that the Court has said that the closure of jury selection is a public trial error. However, not all structural errors should be treated the same and not all public trial errors should be treated the same. They're very different from one another. There could be a closure for the court. Kennedy, if the Constitution is overruled, it's wrongly overruled, and you said, well, in Massachusetts, would there be a reversal, what about under the law of the Constitution? Must there be a reversal on the facts of that hypothetical? The this Court in Pressley did not address remedies. So if one takes Pressley combined with statements about a public trial error being a structural error, takes them together, then yes. But the fact is the Court has never expressly said that. It has never said that a Pressley error is a structural error. And even if it were to be a structural error, that doesn't mean that it should be treated like every other structural error or even like every other public trial error. As I was saying, the courtroom closure could be for a few minutes during the Sotomayor. Breyer, what's your line? I mean, do you suppose that the structural error were excluding African-Americans from the jury or women from the jury? Okay. That's the error. They select a different jury, all white men. Now, we have no way of knowing whether that made a real difference in that case. We don't know. So it's a structural error. Now, are you saying in such a circumstance where the lawyer failed to object, et cetera, therefore Strickland, therefore inadequate assistance of counsel, that that isn't the end of it? That there was an all-white male jury? Isn't that the end of it? Even though we don't know if there was prejudice in the sense that the jury would have decided differently, is that your position? It is our position that prejudice would need to be proven if the jury would have come out differently. So I'd say, at least in my mind, if your point is that even – suppose they had a trial by inquisition. I mean, you know, I can imagine even the most fantastic examples where you don't know whether really the result would have been every – different if you had the most perfect jury. All right? Now, you're saying even there, somebody has to prove that it really made a difference? That's what structural error is really about, that kind of case, where you can't prove it because it was a basically unfair proceeding. Well, the Court hasn't said that. Breyer, I don't care if the Court said it. I'm asking my question, and my question, I thought until I'm getting this answer, that of course in some instances you say it was such an unfair trial and you show inadequate assistance of counsel, and that's the end of it. You presume the prejudice. And I was going to ask you how you draw the line. It may be an unfair trial with respect to the right that's claimed at issue, but where the right that's claimed is one of ineffective assistance, Strickland tells us that that can – that deals with a specific type of – No, I'm not interested in Strickland at the moment. I want to know how you think in this case we should draw the line between those structural errors which are absolutely egregious, and it is plain that the defendant did not get a fair trial, although we cannot prove one way or the other that it would have made a difference to the outcome. The – I would have thought that you would have said, of course in such a case, inadequate assistance of counsel for not raising that error leads to a new trial. We presume prejudice. And if you're not going to say that, then I will withdraw all my questions and keep quiet. I will say that the Court's approach in Cronick made sense, that there what the Court said was prejudice would be presumed where it's highly likely that there was in fact prejudice, and not just any type of prejudice, but prejudice in the sense of a breakdown in the adversary process. In other words, prejudice to the right at issue because of circumstances on the order of a complete denial of counsel. And I say that makes sense because by focusing on the likelihood, the high likelihood, we are not saying that something actually existed merely because we don't know whether it existed. We are saying that it existed when we can be very confident that it did. And by focusing on the right at issue, we are zeroing in on what is before the Court. Sotomayor, the rule that you're asking us to adopt today, Cronick said an absolute absence of counsel, you presume prejudice. We have further said that a conflict of interest, actual conflict of interest, you can presume prejudice. Would an absolute closure, improper closure of a court room for no reason, could we presume prejudice there, or would you require the proof of actual prejudice the way you're advocating here? Yes. We would say that actual prejudice needs to be shown, that a presumption is inappropriate, that a presumption is appropriate in those situations where, again, it can be said with confidence. And this isn't just the approach taken in Cronick. Cronick cited cases dealing with a variety of errors because it's one thing to say that because something is difficult to show, we are going to, for example, relieve the government. What's wrong, wouldn't it be logical to say that there are, that structural errors on the reliability of a trial are affected by the quality of the violation? A partial closure, improper as it may be, is not the same as a total closure, and in a total situation, the reliability of the trial is put into question in such a fundamental way that prejudice can be presumed. Otherwise, we're never going to make any meaning of structural error. Well, but the reliability that Strickland and Cronick talk about is where the result of the trial is rendered unreliable because of a breakdown in the adversary process. So it focuses in on the heart of the right at issue. The Petitioner here could have pursued a stand-alone public trial claim, and then we would be talking about the rights underlying that. So Kimmelman v. Morrison says it's important to look at the values underlying the right that has been asserted. But the Petitioner didn't do that. He didn't do it in the SJC, and he didn't do it here, so instead the focus should be on the values underlying the right to the assistance of counsel and whether there's been a breakdown in the adversary process. That's the specific aspect of fairness of a fair trial that Strickland says the counsel clause is about. Had the Petitioner pursued a stand-alone claim for the right for violation of the public trial right, even though it was forfeited in Massachusetts, it would have gotten review because all claims are reviewed in Massachusetts, just under a different standard. And in fact, looking at the way that Massachusetts has treated those stand-alone claims versus ineffectiveness claims, it's clear that Massachusetts understands what this Court said in Kimmelman, because in one case, the case called Celeste, the Commonwealth, the SJC was applying its substantial likelihood of a miscarriage of justice standard to an ineffectiveness claim based on this kind of a closure, and it cited, it quoted Strickland. But in another case where it was focusing on the underlying right, it talked about public trial theory, even as it applied the same standard of review. Kagan. Kagan. Mr. Ravitz, I don't know. Maybe this is a simple-minded way to look at things, but I've always thought Strickland it's about the fairness and the reliability of the trial process, and that's a pretty important thing to be concerned about. And we have said as part of Strickland that you have to show prejudice, because we're not really concerned about lawyers, however bad they may be, who do things that just don't affect the reliability of the trial. But here, with respect to these structural errors, what we've said again and again and again is we actually just don't know. So the – in any particular case, whether the commission of this error affected the outcome. So what you are suggesting to us is the defendant has to come in and prove as part of Strickland, which as I said is integral to ensuring the fairness and reliability of the process, has to come in and prove as part of that something that we have said time and again is unprovable. And that just seems like that's not something that a legal system should do. You have to prove something that we've admitted is unprovable. Fisherman, Well, when the Court said that it was difficult to prove prejudice from this kind of error, it wasn't talking about the reasonable probability standard of Strickland. That's one of the benefits to the standard. It was specifically designed to account for, and does account for, situations where there might be a breakdown in the process. There might be an unreliable result, and yet it's too hard to prove. It can't be proven by a preponderance of the evidence. And so the standard was a middle-of-the-road standard deliberately, and it's flexible. And it's – and Strickland says take into account all the circumstances. Take into account the totality of the evidence. Well, but then what you're asking us to do is you're asking us to apply Strickland in such a way that we're saying this terrible attorney error took place because we're assuming that, and we think it might. It could have affected the outcome of the trial, but because of the kind of error it is, as we've said a hundred times, we just are not able to say that with any certainty. So we'll give the benefit of the doubt to the government. No. That sounds like what it's saying is exactly the kind of idea that relief would be awarded where prejudice is merely conceivable that Strickland rejected. And it makes sense, because to say that something – because something is difficult to show, it must have existed, one doesn't fall from the other, and it would – and it would allow for relief to be granted in a wide range of situations where, in fact, in reality, there was no prejudice. I'm sorry to keep, like, bugging you about this, but it just seems so Kafkaesque to me. It's like you have to prove something, but we know you can't prove it. Well, I wouldn't even say that it can't be proven, because looking at the – But we've said it. We've said it a hundred times. The Court hasn't said it about a reasonable probability standard. It hasn't said that it – a reasonable probability can't be shown. And as far as proving it, there are analogous situations where what we see is that the party shows a connection between the error. So let's say here, the closure, the spectators that are excluded, and the events that occurred during that time, taking into account what's said in the trial transcripts, and a connection between those things and the issues at trial, giving particular attention to anything that went wrong, and also giving attention to, as I say, to likelihood, to probability. And so the – for example, the Solicitor General cites the McKernan Third Circuit case that was handed down this year, which involved a biased judge. And that's the approach that the Court took there. It was very simple. It was to look at what happened, what went wrong, and what the connection was between that and the error, and then the probability that it had an effect on the judgment. And sometimes that's the best that we can do, but it's because we are inherently considering what would have happened in a different situation. That's the case in every Strickland situation. We're always considering what would have happened. Roberts. Well, let's say, I mean, the argument on the other side is that one of the most important things about the trial is to have the mother with the young offender. Did that cause prejudice or not, that the mother wasn't there? They just looked and there was a guy alone who was accused of killing a 15-year-old, as opposed to troubled youth with his mother holding his hand. I mean, you know, all these things are important. So are they right that that prejudiced the trial or not? They are right that that was unfortunate and it shouldn't have happened. As to whether it had an effect on the judgment, that's something different. Well, how do you prove it? Well, again, the defendant can aim to show a connection between the spectators and what happened at the trial. So, for example, let's say the judge made certain comments that were offensive about a particular group, and members of that group were excluded from jury selection. Yeah, that's a different case. I'm asking about this case. The defendant probably would have had a great difficulty showing it because it was so likely to have occurred. But that doesn't mean that there was a breakdown in the system. That means that the prejudice that Strickland and Cronick called for was just highly unlikely to have been present. And why do I say that? Because the courtroom was filled with as many as 90 members of the public and the And because there was no evidence taken and there was no argumentation on the merits. And because once the courtroom, once the jury selection process was finished, the courtroom was opened up. And there was no issue raised about the rest of the jury selection proceeding or the jury that was chosen. It was only the courtroom closure. And then when it was opened up, the jurors heard evidence of a confession. And they heard other evidence of biological evidence and ballistics evidence. So, yes, here it was just highly unlikely that there was, in fact, prejudice. Just on a final note, it's been said that structural errors are the gravest type of errors, and this Court in Gonzales-Lopez redirected things and clarified that And they've been rendered structural, given that classification, for different reasons. And it's important to focus on those differences, just as Strickland says it's important to focus on the different circumstances in a given case. And if there are no further questions from the Court, thank you very much. Ms. O'Connell. Mr. Chief Justice, and may it please the Court. I'd like to begin where my co-counsel just left off here with the idea that any time a structural error occurs, it leads to fundamental unfairness and unreliability in the outcome of the trial. Structural errors implicate fairness in a way that's broader than the interest that's protected by the Sixth Amendment right to the effective assistance of counsel. Under Strickland, we're focused on whether counsel's error undermines confidence in the verdict. You're asking whether there was such a breakdown in the adversarial process that we can no longer rely on what the jury did. And the Court in Gonzales-Lopez pushed back on the idea that all structural errors are necessarily the type of error that undermine confidence in the reliability of the trial. And I can give three examples of scenarios where structural errors occur where the courts have concluded that those errors do not undermine the reliability of the trial outcomes. Batson errors, right to counsel of choice, and biased trial judge. In the context of Batson errors, which you were talking a little bit about before, we've cited some cases in page 18 and 19 of our brief where courts of appeals have looked at cases where Batson errors occurred and said, okay, there was a Batson error. We consider that a structural error. But it didn't undermine our confidence in the outcome of this trial. There was overwhelming evidence of guilt. There's no reason to believe that any juror that was actually sitting on the jury had any kind of a bias. And those decisions are consistent with this Court's opinion in Allen v. Hardy, which is the case that holds that Batson is not retroactive. In that case, the case that holds that Batson is not retroactive. Breyer, that's exactly what's worrying me. Batson errors, you know, we can think of a host. Sir Walter Raleigh is in the star chamber. You know, I mean, now, the government's position is what? The government's position is that even though there is a serious structural error, really serious, the old white jury, the star chamber, et cetera, even then the lawyer didn't object, even then the person doesn't automatically get a new trial. The truth of the matter is we don't know what would have happened in the jury room. We can't say. And if what we're supposed to do is weigh the evidence, I guess the jury would have said you're having trial by appellate judge. And so do we get into that? Is that what you want, that in each case, no matter how egregious sort of the structural error, which may or may not affect the jury, we don't know, that there is no new trial? The appellate judges are supposed to say whether or not there really would have been or likely would have been an impact on this case? That strikes me as a little ‑‑ I mean, I would like to hear your answer, because it strikes me as not ‑‑ yeah. O'Connell. It's our position, Justice Breyer, that in the case of structural errors, you still have to show prejudice. It doesn't matter what the structural error is. The Strickland test says that we're looking under the second prong to see if this error had an effect on the outcome of the trial. Maybe there's a reasonable probability that it did, in which case the standard is satisfied. And if there's not, then the standard is not satisfied. We don't run the ‑‑ rerun the trial just because we don't know. Alito, do you‑‑ Alito Is there a distinction between the examples that you gave, where it would appear that the issue would be a question of harmless error, and the situation here, where the question is whether there's a constitutional error at all? O'Connell. Well, so I think that this case has been litigated on the assumption that there has been a constitutional error, a Sixth Amendment violation of the public trial. No, but that's not the error that's ‑‑ that is before us. The error ‑‑ the alleged error that's before us is a violation of the right to trial. The right to counsel. I must have misunderstood the question. Well, okay. It was probably not very clear. The error ‑‑ what we are being asked to address is the right to counsel. Am I right? That's correct. And there is no violation of the right to counsel based purely on deficient performance. Isn't that right? Correct. So there has to be ‑‑ the prejudice prong has to be satisfied. Yes. But I thought your understanding of Batson was that you were saying when an attorney is deficient as respects to a Batson claim, there, too, you would say that sort of too bad. Yes, that you still must satisfy the prejudice prong in order to run the trial. So your examples were ineffective assistance of counsel cases, not just Batson cases. No. Well, Batson cases would be if, you know, if the attorney didn't object, it's being  But that's the underlying violation of the ineffective assistance claim. Correct. Correct. And you would say the same rule would go, and you have to prove prejudice. Correct. Even though we've said over and over that you can't prove prejudice. Well, I think on that point, Justice Kagan, the idea that you can't prove prejudice, the Court has said it's difficult to do. That may be true as a general matter. It's not true across the board. We've cited cases in our brief with respect to the biased trial judge structural error, for example, where courts have done a case‑by‑case inquiry and said, okay, in this case, the bias of the trial judge, there is a reasonable probability it would have affected the trial outcome. In this case, there is no reasonable probability that it would have. And it's not the ‑‑ the burden of proof in the Strickland context is on the defendant. You know, I'm not saying that there aren't cases where you can have a sort of gut intuition as to whether it did or not, but one of the things that have made us put these particular rights in this box called structural is that we say, you know, notwithstanding that you can pick out a case here and there and say, okay, I kind of know, in general, these are ‑‑ it is so speculative as to whether this fundamental defect in the trial process caused error that we're going to ‑‑ to presume it. And so that, Justice Kagan, is the rationale for not letting the government prove harmless error if the objection is preserved. And I think a big part of that is that these interests, a lot of these interests are ones that would not adequately be protected if that rule was not dispensed with in the harmless error context for preserved objections. I think the most stark example is a McCaskill error, the right to represent yourself, where if we didn't exempt that type of an error from harmless error analysis, it would always be harmless because the judge could just deny the motion and then say, well, there was no prejudice because you would have been worse off representing yourself. In the Strickland prejudice, the tables are turned and the defendant has the burden to prove that there was some sort of ‑‑ there was a reasonable probability of a different outcome at trial had this error been objected to and been fixed. And there's just no reasonable probability of that in this particular case. Kagan. Kagan. I don't think we've ever really talked about burdens when we label things structural errors. You know, we don't say, oh, you haven't met your burden. I mean, what we've said is that the whole burden analysis kind of goes out the window because this is so hard to prove because it's so speculative. So it's really not a question of who has the burden. It's just never been the way we've addressed the structural error category. I think in Strickland, it's clear that the proving each prong of Strickland, deficient performance and prejudice, is on the defendant. And so I guess it is our position that even though it's difficult to prove, I mean, the test is not meant to be easy. We're looking to identify cases where the error, the attorney's error. Well, it's not meant to be easy, but it's meant to be possible. And what we've said in our structural error cases is that it's not possible in a very, very large proportion of them. Well, I guess I'd like to push back on that a little bit, though. And I mean, I could give an example in the public trial context in specific where, you know, a lot of times when this particular right is at issue or is violated, it's with respect to the courtroom closure for one witness, say, an undercover police officer, a rape victim, a child, or something like that. And if, you know, if the courtroom is closed for that witness's testimony and there's no objection and on appeal, the court of appeals says, oh, well, that courtroom closure was unjustified under the Waller factors, and if that witness didn't testify or wouldn't have testified to those things but for the courtroom closure, you could absolutely evaluate that and see if there was a reasonable likelihood the trial would have come out differently had that witness not testified. So I don't think it's the case that it may be a general rule across the board that structural errors are difficult to prove, but I don't think it's true in every case. Roberts. Is the difficulty in any particular case something that can be weighed in determining whether the defendant has carried his burden of showing prejudice? I mean, there's some of these. You say, I guess we have it required in some Batson cases. I think it would be that's one where I do think it would be almost impossible to put the burden on showing prejudice. On the other hand, denial of counsel of choice, I would think that would be pretty easy to show whether there's prejudice or not. Is that something a judge reviewing whether there's been an adequate showing of prejudice can take into account, or is it all or nothing? No, I think so. In Strickland, I think it's page 459 of Strickland, the court describes the test for how to do a case-by-case prejudice inquiry under Strickland, and the court looks to was the evidence against this defendant overwhelming? Was the error that occurred pervasive in that it affected everything that happened in the trial, or was it just limited to one particular witness or one particular thing? So I think, you know, under Strickland, the test is flexible enough that courts could take into consideration what type of an error it was. I think Justice Gorsuch was going to say. Kennedy, how about here? And we get into the whole problem with speedy trial. They close it, pardon me, lack of public trial. They close it for an hour. They close it for half a day.  They close it for two days. They close it for the voir dire. How do we go about looking at that? Is that presented in this case? Well, I think this case has been litigated on the assumption that there was a Sixth Amendment violation here. If this was our own case, there is a triviality exception to the Sixth Amendment public trial right that's recognized in the Federal courts. We've actually taken the position in various cases that a courtroom closure during voir dire is not a Sixth Amendment violation because it doesn't undermine the purposes of the public trial right. But I think this Court comes to the Court on the assumption there was a Sixth Amendment violation. But I think the Court can take into account that it was closed for only a limited amount of time in determining prejudice under Strickland. Roberts. Thank you, Ms. O'Connell. Mr. Kimberley. Thank you, Your Honor. Just a few brief points. First, Justice Kennedy, to address what you just, the hypothetical and line of questions that you just raised, the question there, I think, is whether a public trial violation happened at all. And although there may be difficult cases where it's unclear whether a closure of a particular length or the exclusion of some and not all actually amounts to a public trial violation, after Presley v. Georgia, there's no question that this is a public trial violation. Well, what about counsel's argument we just heard a moment ago that there's a triviality exception? Might this case qualify for that? So, one, we don't disagree that there is a triviality exception. It certainly would not qualify after Presley v. Georgia. The triviality question comes in at the threshold issue of whether there has been a violation of the public trial right at all. There's no question under this Court's precedents, and certainly the way that the lower courts uniformly have treated public trial errors after Waller, that when it is determined that the Sixth Amendment right to a public trial has been violated, it is structural. And so triviality comes into whether there was, in fact, a violation, not whether, assuming there is one, it's structural. If it happened, it's structural. I understand, but why should we assume there was one here? Why wasn't any? Well, I don't think the Court needs to look any further than Presley v. Georgia. Presley v. Georgia involved precisely the same circumstances here. The courtroom was overcrowded. The judge closed the courtroom to the public, and this Court said in a 7-2 decision that it was a violation of the public trial right. If I may, Justice Sotomayor. It didn't get involved with the structural. That was a per curiam opinion, and it was just a question was, does it violate the public trial right? Yes. But Presley doesn't go on to say what the remedy should be when that's not brought up by counsel, and you're on a verdict. That's correct, Your Honor. That question is answered by Waller itself, which said that it's the proceeding itself that's closed that has to be redone, and so the upshot of a courtroom closure during an entire jury impanelment is that the jury impanelment has to happen again. The idea is that a jury impaneled behind closed doors is not a fair jury, and so it's the same sort of analysis that might arise in a Batson case. The jury not being fairly constituted, the trial has to take place again. Breyer, if we're going to distinguish among substantial, among the structural errors, taking the standard out of Olano and saying those that seriously affect the fairness, integrity, or public reputation of judicial proceedings, if the procedural – if the structural error rises to meet that standard, then you don't have to show prejudice. But if it doesn't, then you better. Now, that would harmonize the plain error and this proceeding which can come up in the – in a collateral proceeding. Do you think about that? I don't think that there's a basis in this Court's structural error precedence  Breyer, but if you're asking us, you say no, none, just take structural error as your category, and period, and that's it. Right. Okay. Now, but they make one – and they want to go to the other extreme, basically. But if we're cutting this child in two, what about that as a standard? I guess it's at least as we understand what this Court has said about structural errors, which is that they undermine – and I should say in particular the public trial right, which goes to the very perception of the judiciary by the public and undermines, in our view, certainly in this Court said in Richmond Newspapers and Press Enterprises, that courtroom closures – and those cases, by the way, were – But that's the third prong. You're not answering Justice Breyer's question with respect. That gets you past the third prong, but it doesn't get you home in an unpreserved error case. You still have to meet the fourth prong. That's true. I – to be clear, though, I mean, I think that would be true in a trial error context as well. That's just to say that the two tests don't overlap. And so, yes, it is true that sometimes relief will be available on collateral review under Strickland, even where it is not available on direct review under a plain error standard. But I think that's – Doesn't that seem highly unlikely? I mean, structural error we think is important, but it isn't automatically a winner every single time if you don't preserve it. May I answer? Please. That's right, Your Honor. I don't think there's anything particularly unseemly about that, because, again, that is exactly how the Court approaches the exact same question in the context of trial errors. It may be that a forfeited trial error affects substantial rights, and yet it gets filtered out at prong 4 of the Alano test. Thank you. And so that could be raised on a Strickland basis, and counsel could obtain – the defendant could obtain relief in that context. Thank you, counsel. The case is submitted.